UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KOURIOCKEIN VANN,

                Petitioner,

        -against-                              **MEMORANDUM & ORDER**
                                                  16-CV-2800 (PKC)

THOMAS GRIFFIN, Superintendent,

                Respondent.
----------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

       Petitioner Kouriockein Vann ("Petitioner" or "Vann"), appearing *pro se*, petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence for drug-related offenses entered on December 18, 2009 in the Supreme Court of the State of New York, Kings County. Petitioner claims that: (1) the warrantless search of his apartment violated his Fourth Amendment rights and the fruits of that search should have been suppressed; (2) his Fifth Amendment *Miranda* rights were violated; (3) the prosecutor suborned perjury and withheld exculpatory evidence; (4) his attorney withheld exculpatory evidence; and (5) he is actually innocent. For the reasons set forth below, the petition is denied in its entirety.

## BACKGROUND

### A. Facts[1]

       On October 20, 1995, prior to the underlying prosecution in this case, Petitioner was convicted in Schenectady County, New York, of Burglary in the Second Degree. (Dkt. 10, at ¶ 4.) Petitioner was sentenced to seven-and-a-half to fifteen years in prison and was paroled on July 17, 2006. (*Id*.) Before being released from prison, Petitioner signed a "Certificate of Release to Parole

---

[1] "In view of the defendant's conviction, we summarize the facts in the light most favorable to the verdict." *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

Supervision," in which he agreed and understood that a parole officer was permitted to visit his residence and that his personal residence and property could be searched and inspected by parole officers. (H. 15-17, 22.)[2]

On March 16, 2007, Parole Officer ("PO") Wynn conducted a home visit at Petitioner's residence with Sergeant Peter Devine, Officer John Serdaros, and Officer Navedo[3] of the New York Police Department ("NYPD"). (T. 66-67, 188-89.)[4] PO Wynn informed Petitioner that Wynn needed to enter the apartment, and subsequently received permission from Petitioner to search the apartment. (T. 84, 88.) PO Wynn began to search Petitioner's bedroom and found a sum of money under the bed. (T. 91, 93-94.) Then, PO Wynn searched the armoire in the bedroom; as he did so, he asked Petitioner if the armoire belonged to him, to which Petitioner responded that it did. (T. 92-93.)

PO Wynn found what appeared to be a "brick" of cocaine in the armoire, and asked Petitioner what it was. (T. 93, 95-96.) Petitioner replied, "You know what it is," and also stated, "it appears to be cocaine." (T. 96.) Wynn then found a second "brick" of cocaine in the armoire, as well as a large sum of money—approximately $14,000 or $15,000—in various locations throughout the bedroom. (T. 97-99.) Wynn placed Petitioner in handcuffs for security reasons before searching the living room, where Wynn found a .380 automatic pistol and ammunition in a bag under the television stand. (T. 98, 102-03.) The police officers who had accompanied Wynn to the residence placed Petitioner under arrest, and the search was halted. (T. 106-07.)

---

[2] "H." refers to the transcript of Petitioner's suppression hearing held on July 16, 2008, July 25, 2008, and November 18, 2008. (Dkt. 10-2.)

[3] Officer Navedo's full name is not evident from the record.

[4] "T." refers to the transcript of Petitioner's trial from November 18, 2009 to November 30, 2009. (Dkts. 10-4, 10-5, 10-6, and 10-7.)

2

Petitioner's teenage daughter was also in the apartment during the visit. (T. 85.) After a conversation with Petitioner, the daughter got up to leave the apartment and picked up a backpack. (T. 109-10.) The officers searched the bag and found, *inter alia*, a "large sum of U.S. currency" and car keys. (T. 112.) As a result, they placed Petitioner's daughter under arrest. (T. 113, 281.) The officers then secured the apartment before leaving to get a search warrant. (T. 114-15.) After obtaining a search warrant, the officers continued to search Petitioner's residence and found, *inter alia*, more money, two handguns, loose ammunition, bags of cocaine, packaging material, and a scale. (T. 118-23.)

Petitioner and his daughter were transported to the 67th Precinct. (T. 281.) Michelle Colon, Petitioner's common law wife who lived with Petitioner, but was not present at the time of the search, was subsequently arrested. (T. 339.) Later that day, PO Allen and PO Wynn, along with "several individuals" from the King's County District Attorney's Office, were with Petitioner for an hour-and-a-half to two hours at the District Attorney's Office. (H. 144-46.) The officers did not administer *Miranda* warnings to Petitioner. (H. 130-31.) The officers told Petitioner that his daughter could be charged with a crime. (H. 126-30.) Thereafter, Petitioner admitted that the drugs were "all mine". (H. 141-43.)[5]

Petitioner and Colon were each indicted on two counts of Criminal Possession of a Controlled Substance in the First Degree, two counts of Criminal Possession of a Controlled Substance in the Third Degree, two counts of Criminal Possession of a Controlled Substance in the Seventh Degree, two counts of Criminally Using Drug Paraphernalia in the Second Degree, six counts of Criminal Possession of a Weapon in the Second Degree, three counts of Criminal

---

[5] At the pre-trial suppression hearing, the prosecution conceded that the un-Mirandized admission could not be used as evidence in its case-in-chief, but sought to use it as impeachment material if Petitioner testified at trial. (H. 215.)

Possession of a Weapon in the Third Degree, and six counts of Criminal Possession of a Weapon in the Fourth Degree.

## B. Suppression Hearing

Before trial, Petitioner moved to suppress all of the evidence recovered from Petitioner's apartment, as well as statements he made in connection with the search of his apartment. The Honorable William E. Garnett held a *Mapp/Dunaway/Huntley* suppression hearing on July 16, 2008, July 25, 2008, and November 18, 2008. (Dkt. 10-2.) PO Allen and Police Officer Serdaros testified on behalf of the prosecution. Petitioner's daughter's aunt, Karma Pair, testified on Petitioner's behalf. (*Id.*)

At the hearing, PO Allen testified that she became Petitioner's parole officer in July 2006. (H. 14-15, 26.) She described the "Certificate of Release to Parole Supervision" that Petitioner signed, and stated that she repeated these conditions to Petitioner orally and he confirmed that he understood them. (H. 17, 22-23.) As part of his parole, Petitioner was referred for drug treatment, although he had "no drug history." (H. 23-24.) However, in November or December 2006, January 2007, and February 2007, Petitioner's urine tested positive for cocaine. (*Id.*) As a result of these positive drug tests, Allen spoke with her supervisor in February and March 2007, and her supervisor approved "[a] [home] visit that would lead to a search" for some time in March 2007.

(H. 24-25, 38, 53-54.)[6] Allen was then contacted by former PO Wynn[7] who, as part of the Division of Parole's "Targeted Offender Program", was assisting other parole officers with visits to parolees who were convicted of burglary. (H. 33-38.) Wynn suggested a visit date of March 16, 2007. (H. 37-38.) PO Allen was ultimately unable to visit Petitioner's residence on March 16, 2007 and asked Wynn to go in her stead "to do a visit[,] which led to a search. . . . [Wynn] was going to do a visit based on the fact that we had . . . the positive urines from the drug program, which led the supervisor and myself and another supervisor to believe that maybe there was drug dealing going on in the residence." (H. 28; *see also* H. 24-25, 36.) Allen believed that Petitioner might be selling drugs "based on the fact that he [did not] have a drug history, and to [Allen's] knowledge from training, an individual could obtain a positive urine by having contact with drugs." (H. 57-58.) This reasoning was communicated to Wynn. (*Id.*)

After the visit and search, PO Wynn called PO Allen to inform her that "he found drugs and a weapon inside the apartment." (H. 30.) He said that Petitioner had given Wynn "permission to search [Petitioner's] room" and to "search whatever he needed to." (H. 48.) However, Allen testified that Petitioner's consent was only obtained "out of courtesy" because his parole conditions already required that he "consent[] to [searches by the Division of Parole] when he's released." (H. 54.) Officer Serdaros also testified at the hearing and stated that he went to Petitioner's home,

---

[6] On cross-examination, PO Allen was asked about the difference between a "home visit" and a search. She stated that "during a regular home visit, you go in the residence, you sit down for a little while. You may stand up and just talk with the family, see how things are going. When you go do a search, usually you go in with definitely the notion of obtaining a different item." (H. 32; *see also* H. 51 ("[W]e actually do a visit and it's customary to know that when you do a visit, it can start out as a regular visit, and can escalate to a search.").) According to the Parole Guidelines, a search also requires prior approval from a supervisor. (H. 52-53; Dkt. 18-1 at 3.)

[7] Wynn did not appear at suppression hearing because he was no longer with the Division of Parole and lived in Georgia at the time of the hearing. (H. 68.)

5

in uniform, "to assist parole on a couple of house visits, home visits on parolees." (H. 156-58.)[8] Officer Serdaros stated that up until the moment PO Wynn found the first firearm, PO Wynn was in charge of the search of Petitioner's residence. (H. 167.) However, after PO Wynn discovered the firearm, Officer Serdaros took charge of the scene. (*Id*.)

Karma Pair, Petitioner's daughter's aunt, testified for Petitioner. (H. 195.) Pair stated that on March 16, 2007, Petitioner called her to pick up his daughter. She arrived at Petitioner's residence at around 7:00 a.m. and stayed until after 8:00 a.m. (H. 197, 201.) According to Ms. Pair, Petitioner "was upset about [the officers] saying they were going to search [the apartment] and they didn't have a warrant", and that an officer responded, "you know, well, we can take your aunt and take your daughter. . . . They said they can arrest me and arrest [Petitioner's daughter]." (H. 198-99.)

On January 16, 2009, the trial court denied Petitioner's *Dunaway* and *Mapp* motions, and denied Petitioner's *Huntley* motion to suppress the statements made during the search. (Dkt. 10-3, at 22.)[9] The trial court also found that the statement Petitioner made at the District Attorney's Office was voluntary, and denied Petitioner's motion to preclude the prosecution from using the statement as impeachment material at trial. (*Id*.)

---

[8] PO Allen also testified that PO Wynn brought NYPD officers with him when he went to visit Petitioner. (H. 55.) She noted that while "[u]sually it's a parole officer along with another parole officer" that goes on a home visit, if there were not enough parole officers, police officers would go instead because "depending on how many individuals reside in a house, that's the amount that you total up to how many officers you would bring." (H. 56.) At the time of the search, there were three people living at Petitioner's residence, as he was living with Colon, as well as his daughter. (H. 27.)

[9] Page numbers refer to the pagination generated by the CM/ECF system, and not the document's internal pagination.

### C. Colon's Guilty Plea

On July 25, 2008, Colon pleaded guilty to Attempted Criminal Possession of a Controlled Substance in the Third Degree and Criminal Possession of a Weapon in the Fourth Degree. (P. 5.)[10] Pursuant to the plea agreement, she received five years' probation and, as part of her plea allocution, was required to "inculpate her co-defendant[.]" (P. 5, 10.) At the plea hearing, Colon stated, *inter alia*, that she "knowingly and unlawfully attempt[ed] to possess a narcotic drug; namely, cocaine, that [she] possessed that cocaine with Mr. Vann, and that both of [them] possessed that cocaine with the intent to sell it." (P. 16.)

### D. Trial, Verdict, and Sentencing

Petitioner's trial was held from November 18, 2009 to November 30, 2009 before Justice Debra Silber in the Supreme Court of the State of New York, Kings County. POs Allen and Wynn, Officer Sedaros, and Sergeant Devine testified, *inter alia*, to the events of the search described above. (Dkts. 10-4, 10-5, 10-6, 10-7.) A criminalist also opined that the substance found in the "bricks" was in fact cocaine. (T. 414.) Petitioner did not present a defense on his behalf. (T. 582.)

On November 30, 2009, the jury convicted Petitioner of Criminal Possession of a Controlled Substance in the First Degree, Criminal Possession of a Controlled Substance in the Third Degree, and Criminally Using Drug Paraphernalia in the Second Degree. (T. 726-28.)[11] On December 15 and 18, 2009, the trial court sentenced Petitioner, as a second felony drug offender, to: (1) concurrent terms of twenty-five years in prison, to be followed by five years of post-release

---

[10] "P." refers to the transcript of Colon's plea hearing held on July 25, 2008. (Dkt. 10-2.)

[11] Petitioner was acquitted of all three counts of Criminal Possession of a Weapon in the Second Degree and two counts of Criminal Possession of a Weapon in the Third Degree. (T. 726-28.) The jury was unable to reach a verdict on the third count of Criminal Possession of a Weapon in the Third Degree and the trial court declared a mistrial. (T. 733.) Notably, the Property Clerk's Office accidentally destroyed the guns before trial. (T. 547-58.)

supervision, on his conviction of Criminal Possession of a Controlled Substance in the First Degree; (2) fifteen years in prison, to be followed by three years of post-release supervision, on his conviction of Criminal Possession of a Controlled Substance in the Third Degree; and (3) one year in prison on his conviction of Criminally Using Drug Paraphernalia in the Second Degree.

### E. Direct Appeal

In August 2011, Petitioner appealed his conviction to the New York State Appellate Division, Second Department. In his counseled brief, he argued that the physical evidence should have been suppressed as the fruits of a warrantless, illegal search and that his statements should have been suppressed because he had not been advised of his *Miranda* rights. (Dkt. 10-8, at 1-33.)

On February 7, 2012, the Appellate Division affirmed Petitioner's judgment of conviction. *People v. Vann*, 92 A.D.3d 702 (2d Dept. 2012). The Appellate Division held that Petitioner's "specific arguments" were "unpreserved for appellate review, as they were not raised before the suppression court." *Id.* at 702. The Appellate Division found that, in any event, the argument concerning suppression of evidence from the search was without merit, "as the search of his apartment was rationally and reasonably related to the parole officer's duty to detect and prevent parole violations." *Id.* The Appellate Division also found that Petitioner's remaining contentions were without merit. *Id.* The Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision on May 7, 2012. *People v. Vann*, 19 N.Y.3d 868 (2012).

### F. Motion to Vacate

On December 29, 2011, Petitioner, proceeding *pro se*, moved to vacate the judgment before the trial court while his direct appeal was pending. (Dkt. 10-8, at 114.) Petitioner stated he was deprived of a fair trial because: (1) Officer Serdaros falsely testified as to whether he was in full uniform during the visit to Petitioner's residence and when Petitioner was arrested; (2) his Fourth

8

Amendment rights were violated by the unlawful search of his apartment; (3) the prosecution failed to meet its burden at the suppression hearing when it failed to call PO Wynn to testify; and (4) the testimony of Officer Serdaros was incredible as a matter of law. (*Id.* at 116.)

On April 26, 2012, the trial court found that Petitioner's unreasonable search claim was procedurally barred, "as it was previously determined on the merits upon an appeal from judgment." (*Id.* at 148.) As to Petitioner's remaining claims, the trial court found that they were procedurally barred because Petitioner either previously raised them on direct appeal or because he could have raised them on direct appeal but failed to do so. (*Id.*) In the alternative, the trial court found that the claims were "without merit and frivolous." (*Id.*)[12]

On January 18, 2013, the Appellate Division denied Petitioner's motion for leave to appeal the trial court's denial of his motion to vacate the judgment. (*Id.* at 161.) Petitioner did not seek leave to appeal the Appellate Division's decision to the New York Court of Appeals. (Dkt. 10, at 11-12.)

**G. Second Motion to Vacate**

On March 4, 2014, Petitioner moved again before the trial court to vacate his judgment of conviction. (Dkt. 10-9, at 2-44.) Petitioner argued that his conviction should be vacated because: (1) his trial counsel did not inform him that Colon wanted to testify on his behalf and take responsibility for the crimes; (2) his counsel and the prosecution suppressed this evidence; (3) a post-trial affidavit by Colon (attached to his motion) constituted new evidence; (4) he was actually

---

[12] In relevant part, the trial court found that there was no evidence that Officer Serdaros perjured himself and that even if his accounts were inconsistent, there was no likelihood that the inconsistences contributed to Petitioner's conviction. Additionally, the court found that Petitioner's Sixth Amendment rights were not violated as a result of the prosecution's decision not to call PO Wynn because hearsay evidence is admissible in suppression hearings. (Dkt. 10-8, at 148.)

9

innocent; (5) his premises were illegally searched and the evidence illegally seized; and (6) the officers violated his Fifth Amendment rights by not giving him *Miranda* warnings before questioning him. (*Id.*)

On November 24, 2014, the trial court denied Petitioner's motion, stating that Petitioner's claims were collaterally estopped and that Petitioner's claims concerning his actual innocence, ineffective assistance of counsel, and prosecutorial misconduct were "unsupported." (*Id.* at 135.) The trial court also held that Colon "changing her version of the facts is not new evidence", but "would only serve to impeach her prior statements." (*Id.*) On July 31, 2015, the Appellate Division denied Petitioner's request for leave to appeal the trial court's denial of his motion to vacate the judgment. (*Id.* at 148.) On November 27, 2015, the Court of Appeals denied Petitioner's application for leave to appeal the Appellate Division's decision. (*Id.* at 159.)

### H. *Habeas* Petition

On May 28, 2015, Petitioner submitted the instant petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Dkt. 1.) Petitioner asserts that: (1) the evidence obtained from the search of his apartment should have been suppressed, (2) he was improperly denied his *Miranda* rights during the search of his apartment, and (3) his statements at the District Attorney's office were made under duress in violation of the Fifth Amendment. (*Id.*) On February 27, 2017, Petitioner filed a traverse petition and raised three additional grounds: (4) prosecutorial misconduct, (5) ineffective assistance of counsel, and (6) actual innocence. (Dkt. 18.)

### STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

10

of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 411 (2000)). The Second Circuit has added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000)).

11

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

### A. Petitioner's Claims are Time-Barred

AEDPA sets a one-year limitation period for the filing of a petition for a writ of *habeas corpus* by a person in custody pursuant to a state court conviction. 28 U.S.C. § 2244(d)(1). The applicable one-year period runs from the date on which one of the following four events occurs, whichever is the latest:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Petitioner concedes that his *habeas* petition was filed after AEPDA's one-year limitations period. (Dkt. 1, at 15.) However, he asserts his "actual innocence", which, "if proved, serves as a gateway through which a petitioner may pass[,] whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

Petitioner's "actual innocence" claim, if tenable, would allow this court to consider his

untimely petition in its entirety, *House v. Bell*, 547 U.S. 518, 537-38 (2006), "as if it had been filed on time[,]" *McQuiggin*, 596 U.S. at 387. However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)) (alteration in original). "At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

Petitioner states that Colon's post-trial sworn affidavit, dated October 11, 2013, constitutes new evidence that demonstrates his actual innocence. (Dkt. 10-9, at 5.) In the affidavit, Colon claims that Petitioner is innocent and that she was the sole owner of the drugs. (*Id.* at 37.) However, this evidence is incredible, given Colon's previous sworn and unsworn statements to the contrary. After her arrest, Colon wrote a statement for the police, after being Mirandized, in which she stated:

> I Michelle Colon know dat Kouriockien Vann have drugs. The drugs that was found are his. The guns dat was found was his: He was doing all the sell's and buying a brick or 2 a week. He never tell's me where drugs is at he just lets me open them. I don't really no a lot about the situation but I can say for a fact that the guns and drugs are his. I knew him for about 2 years and I just found out no so long ago that he sell's drugs. I found out about 6 months ago and I just was scared for my life. We had an argument a couple of days ago and I just left. When I came back today I was going crazy seeing myself in jail. He needs to man up and say that the drug's are his.

(*Id.* at 49-50, 90.) And when Colon pled guilty, she stated under oath that she "knowingly and unlawfully attempt[ed] to possess a narcotic drug; namely, cocaine . . . with Mr. Vann, and that

13

both of [them] possessed that cocaine with the intent to sell it." (P. 16.) If Colon had testified on Petitioner's behalf at trial, the prosecution would have been able to impeach her with her prior statements inculpating Petitioner, and potentially charge her with perjury. *See* N.Y. Penal Law §§ 210.15, 210.20. Colon would not have been a credible witness, and her testimony would not have changed the jury verdict, but rather, may have actually been harmful to Petitioner's case. *See Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) ("[T]he *habeas* court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record.") (citing *Schlup*, 513 U.S. at 327-28); *Lopez v. Miller*, 915 F. Supp. 2d 373, 401 (E.D.N.Y. 2013). And, as discussed *infra*, in light of the overwhelming evidence of Petitioner's guilt, including his own confession, he cannot demonstrate that "in light of [Colon's affidavit], . . . [it is] more likely than not [that] any reasonable juror would have reasonable doubt[]" as to Petitioner's guilt. *House*, 547 U.S. at 538.[13]

Petitioner's *habeas* petition is therefore time-barred.

### B. Petitioner's Claims Are Without Merit

However, even assuming *arguendo* that Petitioner's claims are not time-barred or otherwise procedurally barred, they are without merit.

#### 1. Unlawful Search

Petitioner claims that PO Wynn and the accompanying police officers unlawfully searched his apartment without a search warrant to seek evidence of a new crime. The Second Circuit has held that a parolee's consent is not required "to permit parole officers to conduct a warrantless search reasonably related to their supervision responsibilities." *United States v. Newton,* 369 F.3d

---

[13] To the extent that Petitioner makes a claim for actual innocence as an independent ground for relief, his claim is denied for the same reasons.

659, 668 (2d Cir. 2004); *see also United States v. Barner,* 666 F.3d 79, 84-85 (2d Cir. 2012); *United States v. Grimes,* 225 F.3d 254, 257 & n. 4 (2d Cir. 2000). The search of Petitioner's residence was clearly rationally and reasonably related to the performance of PO Wynn's duties. As PO Allen testified at the suppression hearing, the visit and search were instigated based on Petitioner's positive drug tests in conjunction with the fact that Petitioner did not have a drug history. These facts led Allen and her supervisor to suspect that there may be drug dealing occurring in Petitioner's residence, a suspicion that was communicated to PO Wynn. (H. 24-25, 38, 52.) The Second Circuit has "long recognized a duty on the part of parole officers to investigate whether a parolee is violating the conditions of his parole, . . . one of which, of course, is that the parolee commit no further crimes." *United States v. Reyes*, 283 F.3d 446, 459 (2d Cir. 2002).

To the extent that Petitioner is asserting a "stalking horse" theory—*i.e.*, that a probation officer "may not use his [or her] authority to conduct a home visit to help law enforcement officers evade the Fourth Amendment's usual warrant and probable cause requirements for police searches and seizures"—this claim also fails. *Id.* at 462. The evidence clearly demonstrates that it was the Division of Parole's, not the NYPD's, unilateral decision to conduct the visit and search at Petitioner's residence. (H. 148.) PO Wynn testified that he only went to Petitioner's residence with police officers for security because his partner was not available; PO Allen similarly testified that this was consistent with the Parole Office's normal procedure for home visits. (T. 66-67.) However, even if Wynn intentionally brought police officers for investigative purposes, Petitioner's claim would still fail. *See Reyes*, 283 F.3d at 463 ("Indeed, it is difficult to imagine a situation where a probation officer conducting a home visit in conjunction with law enforcement officers, based on a tip that the probation officer has no reason to believe conveys intentionally false information about a supervisee's illegal activities, would not be pursuing legitimate

supervised release objectives."); *see also United States v. Newton,* 369 F.3d at 665-67; *United States v. Ramos*, 685 F.3d 120, 129 n.6 (2d Cir. 2012).[14]

Accordingly, Petitioner's unlawful search claim provides no basis for *habeas* relief.

### 2. *Miranda* Rights

#### a. Petitioner's Statements at His Apartment

Petitioner claims that his *Miranda* rights were violated when the officers allegedly handcuffed and interrogated him during the search of his apartment and that, as a result, his statements in the apartment should have been suppressed. *Miranda* requirements only apply to custodial interrogations. *United States v. Newton*, 369 F.3d at 669. "[A]bsent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial." *Id.* at 675. However, "a parolee who [is] handcuffed during a parole search of his residence [is] in custody, for *Miranda* purposes . . . because a reasonable person in the parolee's place would have understood that his freedom of movement, even within his own home, [is] restricted to a degree comparable to that of an individual placed under formal arrest." *United States v. Santalucia*, 666 F. Supp. 2d 268, 273 (N.D.N.Y. 2009) (citing *Newton*, 369 F.3d at 673). Even assuming Petitioner's statements after he was placed in handcuffs should have been suppressed, Petitioner most incriminating responses to PO Wynn's questions—*i.e.,* whether the bedroom was Petitioner's, whether the armoire belonged to him, and what the brick of white substance was—were made before Petitioner was handcuffed or could have been considered to be in custody.

Following Petitioner's handcuffing, he only told the officers pedigree information. (H. 168-69.) These statements do not warrant suppression. "[G]eneral on-the-scene questioning as to

---

[14] Additionally, Petitioner's claim that PO Allen and PO Wynn failed to obtain supervisory approval for the search in accordance with Division of Parole guidelines (Dkt. 18-1, at 3) is factually incorrect (*see* H. 24-25, 38, 53-54).

16

the facts surrounding a crime or other general questioning of citizens in the fact-finding process," are outside of *Miranda*'s ambit. *Miranda v. Arizona*, 384 U.S. 436, 477 (1966). Therefore, the trial court's decision to admit Petitioner's post-custody statements in the apartment, even if erroneous, was harmless. *See Vega v. Portuondo,* 120 F. App'x 380, 382 (2d Cir. 2005) ("The introduction of [improper] evidence against a defendant . . . does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'") (quoting *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998)).

### 3. Statements made at the District Attorney's Office

Petitioner also argues that he was deterred from testifying because of the trial court's ruling that his un-Mirandized statements at the District Attorney's Office could be used to impeach him on cross-examination.[15] (Dkt. 18, at 8.) Petitioner's claim fails as a matter of law. While statements taken in violation of *Miranda* must be excluded from the prosecution's case, "the presumption of coercion does not bar their use for impeachment purposes on cross-examination." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985) (citation omitted). Thus, the trial court properly ruled that the prosecution could have impeached Petitioner with his un-Mirandized statement to the police officers in the District Attorney's Office had Petitioner chosen to testify.

### 4. Prosecutorial Misconduct and Perjury

Petitioner argues that Officer Serdaros committed perjury and that the prosecutor similarly committed misconduct by introducing misleading and false evidence and also by withholding exculpatory material evidence. (Dkt. 1, at 3-4.) These claims must fail as "[m]ere conclusory allegations [that] . . . will not suffice" on federal *habeas* review. *U.S. ex rel. Headley v. Mancusi*,

---

[15] As discussed earlier, the prosecution did not seek to introduce Petitioner's confession in its case in chief. (H. 215.)

392 F. Supp. 187, 195 (S.D.N.Y. 1974); *see also U.S. ex rel. Cummings v. McMann*, 429 F.2d 1295, 1296 (2d Cir. 1970). To the extent Petitioner cites to the trial transcript and accompanying exhibits, they do not support his claim.

Additionally, contrary to Petitioner's claim, there is no evidence that Officer Serdaros perjured himself as to whether or not he was wearing a uniform on the day he arrested Petitioner and what time he arrested Petitioner. (*See* H. 159; T. 256.) Lastly, any discrepancies in Serdaros's testimony between the suppression hearing and trial would not meet the standard for establishing perjury. *United States v. Josephberg*, 562 F.3d 478, 494-95 (2d Cir. 2009) ("Differences in recollection do not constitute perjury. . . . It is the task of the jury as the appropriate arbiter of the truth to sift[] falsehoods from facts and determine whether an inconsistency in a witness's testimony represents intentionally false testimony or instead has innocent provenance such as confusion, mistake, or faulty memory." (citations omitted)).

### 5. Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was ineffective because he failed to: (1) call Colon testify on Petitioner's behalf and thus withheld known exculpatory material evidence; and (2) object to the allegedly false testimony by Officer Serdaros, the unlawful search, and the violation of Petitioner's *Miranda* rights. (Dkt. 1 at 4; Dkt. 18, at 9.) Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) to establish ineffective assistance of counsel, a *habeas* petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (quoting *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005)) (internal quotation marks omitted).

Even assuming *arguendo* that Petitioner could meet the first prong of *Strickland*, Petitioner cannot demonstrate prejudice as to any of his claims. "In assessing prejudice stemming from the failure to investigate and introduce certain evidence, a court must consider 'all the relevant evidence that the jury would have had before it' had the evidence been introduced, including unfavorable evidence." *Barnes v. Burge*, 372 F. App'x 196, 199 (2d Cir. 2010) (quoting *Wong v. Belmontes*, 130 S. Ct. 383, 386 (2009) (per curiam)) (emphasis omitted). First, as discussed *supra*, even if defense counsel had called Colon to testify, there is no reason to believe the jury verdict would have been different due to the overwhelming evidence of Petitioner's guilt and Colon's lack of credibility. (P. 15; T. 470.) As to the remainder of Petitioner's claims, in light of the fact that they fail *de novo*, Petitioner also fails to meet the "substantially higher threshold" to demonstrate ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Vann is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.,* 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks and citation omitted)). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 20, 2018
Brooklyn, New York